UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

VINCENT VERDI,

                                        Plaintiff,

             v.                                                    9:22-CV-0825
                                                                   (BKS/CFH)


R. FARAH, et al.,

                                        Defendants.
_____

APPEARANCES:

VINCENT VERDI
Plaintiff, Pro Se
19-A-2467
Shawangunk Correctional Facility
P.O. Box 700
Wallkill, NY 12589


BRENDA K. SANNES
Chief United States District Judge

## DECISION AND ORDER

**I.      INTRODUCTION**

        The Clerk has sent to the Court for review a complaint submitted by pro se plaintiff

Vincent Verdi asserting claims pursuant to 42 U.S.C. § 1983 ("Section 1983").  Dkt. No. 1

("Compl.").  Plaintiff, who is incarcerated at Shawangunk Correctional Facility ("Shawangunk

C.F."), has paid the filing fee for this action.

## II.      SUFFICIENCY OF THE COMPLAINT

### A.      Governing Legal Standard

Pursuant to 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate prisoner pro se complaints).

In reviewing a pro se complaint, the court has a duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing

*Twombly*, 550 U.S. at 556).  Although the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant- unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id*. (internal quotation marks and alterations omitted).

### B.   Summary of the Complaint

Plaintiff asserts allegations of wrongdoing that occurred while he was incarcerated at Shawangunk C.F. *See generally* Compl.  The following facts are set forth as alleged by plaintiff in his complaint.[1]

Plaintiff is sixty-seven years old and "suffers from degenerative osteoarthritis[.]" Compl. at 2.  In or around October, 2021, plaintiff "submitted a sick call slip" requesting to see defendant Dr. HLA-PE-WJN "as soon as possible." *Id*.  Shortly thereafter, plaintiff met with Dr. HLA-PE-WJN and "complained of excruciating pain in his left hip, and how it was impacting his daily activities in a substantial way[.]" *Id*.  Dr. HLA-PE-WJN "subsequently

---

[1] Plaintiff has also attached exhibits to his complaint, which the Court has considered as part of its sufficiency review herein. *See* Dkt. No. 1-1.

ordered that an x-ray be taken of plaintiff's left hip." *Id.* at 3.

In or around November, 2021, plaintiff's left hip was x-rayed at his facility.  Compl. at 3.  In or around February, 2022, plaintiff "was called to the infirmary for his annual physical examination." *Id.*  Plaintiff asked the nurse practitioner who performed the examination if his radiological report was in his medical file.  *Id.*  The nurse practitioner "confirmed that it was, and informed plaintiff that the radiologist had determined that [he] suffered a 9mm osseous fragment seen inferior to the left pubic arch, consistent with an avulsion injury of the ischial tuberosity[.]" *Id.*  The radiologist also determined that plaintiff "suffers from degenerative osteoarthritis of his left hip and knee." *Id.*  The radiologist's report was completed on December 15, 2021, and Dr. HLA-PE-WJN initialed the report on January 5, 2022.  *Id.*

The day after plaintiff's physical exam, he submitted a sick call slip requesting an "immediate appointment" with Dr. HLA-PE-WJN "for the purpose of discussing [his] radiological report and the medical course of action the doctor would order to treat [him]." Compl. at 3.  Roughly one week later, plaintiff received an appointment to see Dr. HLA-PE-WJN on April 7, 2022.  *Id.*  Plaintiff was "incredulous as to why the doctor would schedule the appointment so far off." *Id.*  Plaintiff "subsequently sent Dr. HLA-PE-WJN numerous requests for an earlier appointment, explaining that his pain was getting worse and was having a significant impact on his daily activities and life." *Id.* at 3-4.  Dr. HLA-PE-WJN denied each of plaintiff's requests.  *Id.* at 4.

On April 7, 2022, plaintiff met with Dr. HLA-PE-WJN, explained his symptoms, and asked why his requests to be seen earlier were ignored.  Compl. at 4.  Dr. HLA-PE-WJN "became very defensive and berated plaintiff." *Id.*  Dr. HLA-PE-WJN then discussed a

4

treatment plan with plaintiff, and told him "not to put any weight on his left side." *Id.* Plaintiff "immediately understood that keeping his weight off his left side without tipping over would require a cane, and asked the doctor if he would write a prescription for one." *Id.* Plaintiff also asked for a prescription for a vitamin D supplement to "help [his] degenerative osteoarthritis," and requested a "bone mineral density test" and a permit to possess a chair in his cell. *Id.* at 4-5. Dr. HLA-PE-WJN denied all of plaintiff's requests, and instead "ordered that another x-ray be taken of plaintiff's left hip." *Id.* at 4-5.

Following plaintiff's evaluation, he filed a grievance requesting a medical permit for a chair. Compl. at 5. The Supervisor of the Inmate Grievance Resolution Committee ("IGRC") recommended that plaintiff file "a Special Accommodation Request" with the prison administration regarding the chair. *Id.*

On April 14, 2022, plaintiff submitted a Special Accommodation Request regarding the chair. Compl. at 5. On April 18, 2022, Dr. HLA-PE-WJN received plaintiff's request and "checked the boxes on the . . . form indicating that plaintiff had no physical disability or any functional limitations." *Id.* Dr. HLA-PE-WJN also falsely "indicated on the form that there was no medical record on file of plaintiff's injury." *Id.*

On April 27, 2022, the Deputy Superintendent for Programs (not a party) denied plaintiff's Special Accommodation Request for the chair in his cell based on the information provided by Dr. HLA-PE-WJN. Compl. at 6. On May 3, 2022, plaintiff "was called to the IGRC hearing being conducted to resolve [his] grievance" regarding the medical permit for a chair. *Id.* The IGRC "approved plaintiff's request for a chair . . . based on the radiological report of plaintiff's injury and the symptoms he described." *Id.* Corrections Sergeant

5

Gonzalez, the IGRC's "reviewing officer," also indicated that "chairs in cells do not present any security concerns, and . . . incarcerated individuals . . . residing in double-bunked cells are permitted chairs." *Id.*

Later that day, plaintiff "appealed the IGRC decision to Superintendent McGuiness seeking his approval of [the IGRC's] decision." Compl. at 6. Plaintiff also wrote to Dr. HLA-PE-WJN's supervisor, defendant Deputy Superintendent for Administration at Shawangunk C.F. Farah, to make this official "aware of plaintiff's injury and the radiological report" and "explain[ ] how his injury was impacting his ability to walk, bend down and stand for any length of time" without "excruciating" pain. *Id.* Defendant Farah never responded to plaintiff's letter, and failed to otherwise "remedy plaintiff's concerns and direct Dr. HLA-PE-WJN to treat plaintiff." *Id.* at 7.

On May 12, 2022, Superintendent McGuiness "dismissed the IGRC's decision, ignored Sergeant Gonzalez's assessment, and denied plaintiff's request for a chair." Compl. at 7. Superintendent McGuiness based his decision on the opinion of a facility nurse administrator that a chair in plaintiff's cell presented a security and safety risk. *Id.*

On May 17, 2022, plaintiff appealed Superintendent McGuiness's decision to the Central Office Review Committee ("CORC"). Compl. at 7. On June 3, 2022, plaintiff "sent another letter to defendant Farah, again asking if he was going to intervene and help resolve plaintiff's medical issue." *Id.* at 7-8. Defendant Farah did not respond to plaintiff's letter. *Id.* at 8.

As of July 29, 2022, the filing date of this lawsuit, "plaintiff's injury has not been treated and has gotten worse." Compl. at 8, 10. "Plaintiff's ability to perform life's basic daily functions[,]" such as "walking, bending down, and standing for very long[,] has been seriously

6

limited and is extremely painful."  *Id.* at 8.

Construed liberally, the complaint asserts Eighth Amendment medical indifference claims against defendants HLA-PE-WJN and Farah in their individual and official capacities.[2]

Plaintiff seeks money damages and injunctive relief.  Compl. at 10.  For a complete statement of plaintiff's claims, reference is made to the complaint.

### C.    Analysis

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983.  "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

It is well settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)); *Iqbal*, 556 U.S. at 676.  "[A] Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'"  *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).  "[V]icarious liability is inapplicable to . . . § 1983 suits."  *Iqbal* 556 U.S. at 676.

---

[2] Although the complaint also purports to assert claims under the Fourteenth Amendment, presumably based on Dr. HLA-PE-WJN's alleged creation of false statements in plaintiff's medical records, the Court does not construe the complaint to assert any cognizable Section 1983 claim under this Amendment.  *See, e.g.*, *Bloomfield v. Wurzberger*, No. 9:08-CV-0619 (GLS/RFT), 2009 WL 3335892, at *5 (N.D.N.Y. Oct. 15, 2009) (filing of a false entry in an inmate's medical records, without more, does not constitute a constitutional violation); *Cruz v. Lashway*, No. 9:06-CV-0867 (GTS/RFT), 2009 WL 1734549, at *8 (N.D.N.Y. June 18, 2009) (same); *Benitez v. Locastro*, No. 9:04-CV-0423 (NAM/RFT), 2008 WL 4767439, at *11 (N.D.N.Y. Oct. 29, 2008) (same).

### 1. Official Capacity Claims

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity."  U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984).  Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit.  *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009).  It is well-settled that Congress did not abrogate states' immunity through Section 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the claims asserted in plaintiff's complaint.  *See generally Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); *Dawkins v. State of New York*, No. 5:93-CV-1298 (RSP/GJD), 1996 WL 156764 at *2 (N.D.N.Y. 1996).

The Eleventh Amendment bars suits for damages against state officials acting in their official capacities.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (a claim for damages against state officials in their official capacity is considered to be a claim against the State and is therefore barred by the Eleventh Amendment); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v.*

*Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities.").

Accordingly, insofar as plaintiff seeks monetary damages under Section 1983 against either defendant in his official capacity, such claims are dismissed with prejudice pursuant to 28 U.S.C. § 1915A(b) as barred by the Eleventh Amendment.[3]

### 2. Eighth Amendment Claims

Claims that prison officials have intentionally disregarded an inmate's medical needs fall under the umbrella of protection from the imposition of cruel and unusual punishment afforded by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 102, 104 (1976). The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton infliction of pain" and is incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Id*.; *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986) (citing, *inter alia, Estelle*). While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

"In order to establish an Eighth Amendment claim arising out of inadequate medical

---

[3] In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court established an exception to state sovereign immunity in federal actions where an individual brings an action seeking injunctive relief against a state official for an ongoing violation of law or the Constitution. Under the doctrine, a suit may proceed against a state official in his or her official capacity, notwithstanding the Eleventh Amendment, when a plaintiff, "(a) alleges an ongoing violation of federal law, and (b) seeks relief properly characterized as prospective." *See In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quotations and citations omitted); *see also Santiago v. New York State Dep't of Corr. Serv.*, 945 F.2d 25, 32 (2d Cir. 1991) (holding that such claims, however, cannot be brought directly against the state, or a state agency, but only against state officials in their official capacities). The Court makes no determination, at this point, whether plaintiff's request for a "medical remedy" to address his "serious injury" constitutes prospective injunctive relief.

care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104).  "The standard of deliberate indifference includes both subjective and objective components."  *Id*.

"First, the alleged deprivation must be, in objective terms, sufficiently serious." *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted).  "Determining whether a deprivation is an objectively serious deprivation entails two inquiries[:] [1] . . . whether the prisoner was actually deprived of adequate medical care[; and 2] . . . whether the inadequacy in medical care is sufficiently serious."  *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006) (citations omitted).

The first inquiry requires examining "whether the prisoner was actually deprived of adequate medical care."  *Salahuddin*, 467 F.3d at 279.  Prison officials who act "reasonably" in response to an inmate's health risk will not be found liable because the official's duty is only to provide "reasonable care."  *Id*. at 279-80 (citing *Farmer*, 511 U.S. at 844-47).

The second inquiry under the objective component of the claim is whether the purported inadequacy in the medical care is "sufficiently serious."  *Salahuddin*, 467 F.3d at 280.  If the "unreasonable care" consists of a failure to provide any treatment, then the court must examine whether the inmate's condition itself is "sufficiently serious."  *Id*. (citing *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003)).  A condition is "sufficiently serious" in objective terms if it presents "a condition of urgency, one that may produce death, degeneration, or extreme pain exists."  *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

"Where a plaintiff alleges that inadequate care was provided—instead of alleging a

failure to provide any treatment—the inquiry focuses on 'the particular risk of harm faced by a

prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's

underlying medical condition, considered in the abstract.'" *Revels v. Corr. Med. Care, Inc*.,

No. 9:17-CV-0088 (MAD/TWD), 2018 WL 1578157, at *4 (N.D.N.Y. Mar. 28, 2018) (quoting

*Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003)); *Salahuddin*, 467 F.3d at 280 (noting

that although courts speak of a "serious medical condition" as the basis for a constitutional

claim, the seriousness of the condition is only one factor in determining whether the

deprivation of adequate medical care is sufficiently serious to establish constitutional liability

(citation omitted)).

      With respect to the subjective component of a medical indifference claim, a plaintiff

must show that the defendant "act[ed] with a sufficiently culpable state of mind," *Chance*,

143 F.3d at 702 (internal quotation marks and citations omitted); that is, the plaintiff must

demonstrate that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate

health or safety." *Farmer*, 511 U.S. at 837; *see also Blyden v. Mancusi*, 186 F.3d 252, 262

(2d Cir. 1999) (With respect to the subjective element, a plaintiff must also demonstrate that

defendant had "the necessary level of culpability, shown by actions characterized by

'wantonness.'"); *Hathaway*, 37 F.3d at 68 (holding that "the fact that [defendant] frequently

examined [plaintiff does not] necessarily vindicate [defendant]" where "[t]he course of

treatment [plaintiff] received clearly did not alleviate his suffering").

      At this very early stage of the proceeding, and mindful of the Second Circuit's direction

that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v.

Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that plaintiff's Eighth

Amendment claim against Dr. HLA-PE-WJN survives sua sponte review and requires a response.  In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

The Court, however, reaches a different conclusion with respect to defendant Farah. The Second Circuit recently clarified that "there is no special rule for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).  Instead, "a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  *Id*. (quoting *Iqbal*, 556 U.S. at 676).  Thus, in the context of an Eighth Amendment claim against a supervisory official, a plaintiff must establish that the supervisory official himself "acted with deliberate indifference—meaning that [the official] personally knew of and disregarded an excessive risk to [the plaintiff's] health or safety." *Id*. at 619 (internal quotation marks and citation omitted).

Here, the complaint alleges only that plaintiff sent letters to defendant Farah regarding Dr. HLA-PE-WJN's alleged wrongdoing, to which he never received a response.  In light of *Tangreti*, these allegations are insufficient to plausibly suggest that defendant Farah was personally involved in the alleged wrongdoing.  *See, e.g.*, *Quirk v. DiFiore*, No. 20-CV-5027, 2022 WL 268976, at *3 (S.D.N.Y. Jan. 28, 2022) (dismissing Section 1983 claim against Chief Judge DiFiore where complaint alleged only that this official failed to respond to a letter sent to her by the plaintiff on one occasion, which is insufficient to plausibly suggest her personal involvement in the alleged constitutional violation); *Tripathy v. Schneider*, No. 21-CV-6392, 2021 WL 4504461, at *3 (W.D.N.Y. Oct. 1, 2021) (dismissing Section 1983 claim against Commissioner of New York State Department of Corrections and Community

Supervision and Governor of New York where complaint alleged only that these officials "failed to respond" to plaintiff's complaints of wrongdoing, noting that "the failure to respond to letters protesting unconstitutional actions and/or requesting an investigation is, without more, insufficient to establish personal involvement"); *Peck v. Cnty. of Onondaga, New York*, No. 5:21-CV-651, 2021 WL 3710546, at *10 (N.D.N.Y. Aug. 20, 2021) ("Peck's allegation that Conway failed to remedy the discriminatory conduct against her at the Sheriff's Office after June 18, 2020 essentially argues that he was deliberately indifferent to an ongoing violation. . . . Yet *Tangreti* demands more. . . . Plaintiff must allege that Conway actively participated in a constitutional violation, and this allegation does not further that end."), *reconsideration denied*, 563 F. Supp. 3d 18 (N.D.N.Y. 2021); *Fabrizio v. Smith*, No. 9:20-CV-0011 (GTS/ML), 2021 WL 2211206, at *10 (N.D.N.Y. Mar. 10, 2021) ("In the Complaint, Plaintiff alleged that Mauro and Smith were personally involved because they failed to remedy ongoing First Amendment violations after becoming aware of the retaliation through grievances and appeals. . . . In light of *Tangreti*, Plaintiff's attempt to plead personal involvement based upon the denial of a grievance and/or appeals, lacks merit because it does not plausibly suggest '[t]he factors necessary to establish' a First Amendment retaliation claim."), *report and recommendation adopted by* 2021 WL 2211023 (N.D.N.Y. June 1, 2021); *cf. McCrary v. Marks*, 836 Fed. App'x 73, 74 (2d Cir. 2021) (explaining that where "the most [plaintiff] alleged is that [defendant] received his letter and directed someone at the [agency] to respond to it[, t]hat is clearly not enough to state a claim").

Furthermore, even before *Tangreti*, the law in this Circuit was clear that a supervisory official such as defendant Farah could only be found to have been personally involved in a

13

constitutional violation under a failure-to-remedy theory if the alleged wrongdoing was ongoing. *See, e.g., Rahman v. Fisher*, 607 F. Supp. 2d 580, 585 (S.D.N.Y. 2009) ("[A] supervisor may be liable for her failure to remedy a violation only in those circumstances where the violation is ongoing and the defendant has an opportunity to stop the violation after being informed of it."); *Harnett v. Barr*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008) ("If the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to 'remedy' a violation.").

In this case, it appears from the allegations in the complaint and documents attached thereto that the only ongoing medical issue about which plaintiff made defendant Farah aware was Dr. HLA-PE-WJN's alleged refusal to allow him to have a chair in his cell.[4] Moreover, the allegations in the complaint and documents attached thereto make clear that plaintiff's request for a chair in his cell was, at the time of filing, the subject of a grievance appeal. *See* Compl. at 7-8. Under such circumstances, even assuming defendant Farah received and read plaintiff's letters, and that *Tangreti* did not entirely eliminate supervisory liability under a failure-to-remedy theory, defendant Farah's alleged refusal to override the grievance process does not plausibly suggest that he acted with deliberate indifference to plaintiff's serious medical needs. *Cf. Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) ("We see no reason why [the Superintendent] should have intervened in advance of [a Tier III hearing] in which Colon was to be given the opportunity to substantiate the claim that he

---

[4] The first letter that plaintiff sent to defendant Farah requested intervention regarding Dr. HLA-PE-WJN's denial of his request for a chair in his cell, and expressed dissatisfaction with the treatment he had received, and Dr. HLA-PE-WJN making a false statement regarding his medical history in response to his request for the chair accommodation. Dkt. No. 1-1 at 14-15. Plaintiff also acknowledged in that letter that Dr. HLA-PE-WJN scheduled him for another x-ray of his hip. *Id*. at 15. In the second letter, the only relief plaintiff requested from defendant Farah was that he "grant [plaintiff's] medical permit for a chair." *Id*. at 16.

made in his letter. We therefore conclude that no reasonable jury could have held Senkowski liable.").[5]

Accordingly, plaintiff's Eighth Amendment claim against defendant Farah is dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

## III.   SERVICE

Where a plaintiff has been authorized by the Court to proceed in forma pauperis ("IFP") pursuant to 28 U.S.C. § 1915, the U.S. Marshals Service is appointed to effect service of process of the summons and complaint on his behalf.  *See* Fed. R. Civ. P. 4(c)(2) (U.S. Marshal must be appointed to serve process when plaintiff is authorized to proceed in forma pauperis); 28 U.S.C. § 1915(d) ("the officers of the court shall issue and serve all process and perform all duties in [in forma pauperis] cases.").  In this case, plaintiff has not sought to proceed IFP.  As a result, he is responsible for serving the summons and complaint on defendant HLA-PE-WJN.

Rule 4(c) of the Federal Rules of Civil Procedure provides that "[a]t the plaintiff's

---

[5] Insofar as the complaint may be construed to assert a claim based on inadequate medical treatment unrelated to the refusal to accommodate plaintiff's request for a chair, the first letter that plaintiff sent to defendant Farah indicated that Dr. HLA-PE-WJN scheduled him for another x-ray on April 7, 2022.  Dkt. No. 1-1 at 14-15.  In other words, assuming defendant Farah received and read plaintiff's letter, he became aware only that plaintiff was dissatisfied with the course of treatment, as opposed to that plaintiff was not receiving any treatment.  Furthermore, plaintiff does not allege that defendant Farah is a medical professional.  Thus, defendant Farah's decision to defer to the opinion of Dr. HLA-PE-WJN regarding a recommended course of treatment also does not, without more, plausibly suggest deliberate indifference.  *See, e.g., Brock v. Wright*, 315 F.3d 158, 164 (2d Cir.2003) (non-medical professional's "automatic and complete deference" to complained-of medical decision "is not, by itself, sufficient evidence" of deliberate indifference; *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *14 (S.D.N.Y. Mar. 30, 2017) (plaintiff failed to state a claim with respect to correctional officer because "[c]orrections officers who defer to the judgment of medical professionals are only liable if the plaintiff pleads facts demonstrating that the 'nonmedical defendants should have challenged the medical professionals' decisions'" (quoting *Smith v. Wilson*, No. 9:12-CV-01152, 2013 WL 5466857, at *9 (N.D.N.Y. Sept. 30, 2013))); *Whittle v. Ulloa*, No. 15-CV-8875, 2016 WL 7351895, at *5 (S.D.N.Y. Dec. 19, 2016) ("[A] non-medical administrator's pro forma denial of a grievance based on deference to the opinions of medical staff does not establish that non-medical administrator's personal involvement.").

request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court." Fed. R. Civ. P. 4(c)(3).  Therefore, in order to advance the disposition of this action, plaintiff is advised that he must do one of the following two things within thirty (30) days: (1) submit a signed and completed IFP application, certified by an appropriate official at his current facility, for the Court to consider in accordance with 28 U.S.C. § 1915;[6] or (2) submit a motion requesting service by the United States Marshal.

In the event plaintiff chooses the first option, the Court will evaluate whether the plaintiff has demonstrated sufficient economic need and, in addition, whether the "three strikes" provision of Section 1915(g) bars him from proceeding IFP.  If plaintiff's IFP application is granted, the U.S. Marshals Service will be appointed to effect service of process of the summons and complaint on plaintiff's behalf.  *See* 28 U.S.C. § 1915(d) ("the officers of the court shall issue and serve all process and perform all duties in [IFP] cases.").[7]

If plaintiff chooses the second option, he is advised that his motion requesting service by the United States Marshal must be accompanied by (1) payment of the service fee due to the U.S. Marshal in full in advance by money order or certified check,[8] and (2) all necessary papers for service, including a completed U.S. Marshals Form (USM-285 Form) for

---

[6]  Certified account statements may be submitted in lieu of the completed certificate portion of the IFP application.  *See* 28 U.S.C. § 1915(a)(2).

[7]  If the IFP application is denied, plaintiff will be responsible for serving the summons and complaint.

[8]  Payment in cash or by personal check is not acceptable. For service by mail, the fee is $8.00 per summons and complaint. The cost of service by mail on the remaining defendant in this action is therefore $8.00.  Plaintiff is also advised that, if initial service is unsuccessful, he will be required to pay the U.S. Marshal any additional fee, also in advance, for subsequent service attempts according to the fee schedule set by the U.S. Marshal.

16

defendant HLA-PE-WJN, and one copy of the complaint.  The service documents and payment of the service fee should be sent to the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367, to be forwarded by the Clerk to the U.S. Marshal.

## IV.   CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's Eighth Amendment claim against Dr. HLA-PE-WJN **SURVIVES** sua sponte review; and it is further

**ORDERED** that plaintiff's Section 1983 claims for money damages against the named defendants in their official capacity are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915A(b) as barred by the Eleventh Amendment;[9] and it is further

**ORDERED** that plaintiff's remaining Section 1983 claim is **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted;[10] and it is further

**ORDERED** that plaintiff must, **_within thirty (30) days_** from the date of the filing of this Decision and Order, either (1) submit a completed and signed IFP application which has

---

[9] Generally, when a district court dismisses a pro se action sua sponte, the plaintiff will be allowed to amend his action.  *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999).  However, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile.  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Pucci v. Brown*, 423 Fed. App'x 77, 78 (2d Cir. 2011).  Because these claims are barred by the Eleventh Amendment, leave to amend to would be futile.

[10] Should plaintiff seek to pursue this claim further, he must file an amended complaint.  Any amended complaint, which shall supersede and replace the original complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant which plaintiff has a legal right to pursue, and over which jurisdiction may properly be exercised.  Any amended complaint filed by plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.  Plaintiff's deadline to amend his pleading as a matter of course is set forth in Rule 15(a) of the Federal Rules of Civil Procedure.

been certified by an appropriate official at his facility, or (2) submit a motion requesting service by the United States Marshal along with the service fee and the completed forms necessary for service.  The Clerk is directed to provide plaintiff with a blank IFP application for his completion; and it is further

ORDERED that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions.  All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court.  **Plaintiff is also required to promptly notify, in writing, the Clerk's Office and all parties or their counsel of any change in plaintiff's address; his failure to do so may result in the dismissal of this action**; and it is further

ORDERED that the Clerk of the Court shall provide plaintiff with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

ORDERED that the Clerk shall serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED.**

Dated: <u>September 14, 2022</u>
        Syracuse, NY

Brenda K. Sannes
Chief U.S. District Judge

18