9.22-CV-825

United States District Court
Northern District of New York

U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
OCT 28 2022
AT_____O'CLOCK
John M. Domurad, Clerk - Albany

Vincent Verdi
Plaintiff                           Civil Rights Complaint
    V                               Pursuant to 42 USC 1983
R. Farah, Deputy Superintendent     Civil Case No.
for Administration, in his individual
capacity and
Dr. HLA-PE-WJn in his               Jury Trial Demanded
individual capacity
Defendants

1.  The plaintiff is a pro se litigant who had previously filed

    a civil complaint with this court and was assigned civil

    case number: 9:22-CV-00825-CFH. Whereas IAW Federal Rules

    of Civil Procedure 15(a) the movant is filing an amended

    complaint which shall supercede and replace the original

    complaint.
                        Jurisdiction
2.  This is a civil rights action, brought pursuant to 42 USC 1983,

    alleging Constitutional violations of plaintiff's rights under

    the Eighth and Fourteenth Amendments to the United States

    Constitution. This Court has jurisdiction over the plaintiffs

Claims pursuant to 28 USC 1331, 1343 (3) and (4) and 2201.

## Venue

3. The Northern District Court of New York is an appropriate venue because the events giving rise to the causes of this action herein occurred at Shawangunk Correctional Facility (SCF), located at 200 Quick Road, Wallkill, New York, 12589.

## Parties

4. Plaintiff Vincent Verdi is currently an incarcerated individual at SCF in the custody of New York State Department of Corrections and Community Supervision (DOCCS). And at all times the events that occurred herein was incarcerated at SCF.

5. Defendant R. Farah is the Deputy Superintendent for Administration at SCF is responsible for the conditions and operations at the prison, and is Dr. HLA-PE-WIN's direct supervisor. R. Farah is sued in his individual capacity.

6. Defendant Dr. HLA-PE-WIN (medical license No. 225440) was at all times relevant to the claims herein the

primary health care physician employed or retained by DOCCS

to provide medical care at SCF. Dr. HLA-PE-WIN is sued in

his individual capacity.

Previous Lawsuits

7. The plaintiff filed a previous lawsuit with this court and

was assigned civil case number: 9:22-CV-00825-CFH.

Exhaustion of Administrative Remedies

8. The plaintiff has exhausted all administrative remedies

before filing this civil lawsuit against the defendants.

Factual Allegations

9. The plaintiff has a long family history of rheumatism. The

plaintiff's mother suffered from rheumatoid arthritis which

resulted in her losing her ability to walk on her own. She was

confined to a wheelchair at the early age of seventy. And

the plaintiff's father broke his hip and twenty-four hours after

being hospitalized, he had passed away.

10. The plaintiff is sixty-seven years old who suffers from

degenerate osteoarthritis of both hips, and suffers from

tricompartmental osteoarthritis of his right knee.

11. The plaintiff is a seventy-percent disabled combat veteran

and as such meets the legal standard of a disabled person

IAW 28 CFR 35.108. The plaintiff was diagnosed by the

Department of Veterans Affairs.

12. On or about October 2021, the plaintiff submitted a sick call

slip requesting to see the prison physician to address the

excruciating pain that the plaintiff was experiencing from

his left hip. Days later, the plaintiff met with Dr. HUA-PE-WJN

and reported to him how the pain was effecting his daily activities

in a substantial way; that it was impacting the plaintiff's

ability to walk, bend down, and stand for any length of time.

without the infliction of excruciating pain.

13. Dr. HUA-PE-WJN ordered the plaintiff to get an x-ray

of his left hip. However, the plaintiff was incredulous

4

as to why Dr. HLA-PE-WJn did not conduct any physical examination or ask the plaintiff about his family history relative to rheumatism or provide the plaintiff an interim medical treatment plan, before the results of the x-ray. Dr. HLA-PE-WJn even failed to ask the plaintiff how he injured his hip.

14. Upon information and belief, the plaintiff's initial meeting with the defendant seemed grossly inadequate relative to the plaintiff's symptoms. The defendant's actions seemed totally unreasonable.

15. On or about February 2022, the plaintiff left hip was x-rayed at SCF infirmary.

16. On or about February 2022, the plaintiff was undergoing his annual physical examination and asked the nurse practitioner who was conducting the examination if the plaintiff's radiological report was in his medical file. She had confirmed that it was

5

and ~~that~~ the radiologist had determined ~~that~~ the plaintiff

had suffered a 9 mm osseous fragment seen interior to the

left pubic arch, consistent with an avulsion injury of the

ischial tuberosity with a fragment sharply defined and

displaced inferiorly.

17. The radiologist had also determined that the plaintiff suffers

from a disease known as degenerative osteoarthritis of his

left hip and knee. The radiologist had completed his report

on December 15, 2021, and Dr. HLA-PE-WIN had reviewed the

plaintiff's report on January 15, 2022. Dr. HLA-PE-WIN had

put his initials on the report, acknowledging the radiologist

findings, and checked a box indicating "follow-up will be

arranged with a primary provider". Exhibit 1

18. The plaintiff was alarmed knowing the plaintiff's family

history of his disease. The day following plaintiff's

examination, he submitted another sick call slip requesting

an immediate appointment with Dr. HLA-PE-WJN to discuss

the radiologist report and what medical treatment plan

he would prescribe for the plaintiff.

19. About a week after submitting plaintiff's sick call slip,

plaintiff receives an appointment to see Dr. HLA-PE-WJN

for April 7, 2022. The plaintiff was dumbfounded as to why

Dr. HLA-PE-WJN would schedule the appointment so far off

and not schedule to see the plaintiff immediately, knowing

the plaintiff's age, the seriousness of his diagnosis, and

his symptoms.

20. The plaintiff became alarmed and anxious, and sent Dr. HLA-PE-WJN

numerous sick call requests to be seen much sooner, explaining

to Dr. HLA-PE-WJN that the plaintiff's symptoms were getting

worse, and it was causing the plaintiff significant pain, but

all the plaintiff's cries for medical treatment were denied.

The plaintiff was informed that he had to wait until his

scheduled appointment on April 7, 2022. It was clear that

plaintiff urgently needed medical attention and Dr.HLA-PE-WIN's

delay in seeing the plaintiff would likely put the plaintiff

at substantial risk of further injury if immediate medical

attention were not provided by Dr.HLA-PE-WIN.

## Inadequate Medical Care

21.  On April 7, 2022, plaintiff met with Dr.HLA-PE-WIN. The

plaintiff reiterated his symptoms to Dr.HLA-PE-WIN, and

asked him why he saw fit to delay in consulting with the

plaintiff when he had reviewed the plaintiff's radiological

report on January 5, 2022. Dr.HLA-PE-WIN at this time

became very defensive and berated the plaintiff. He seemed

very surprised that the plaintiff knew that he had reviewed

the plaintiff's radiological report, and upon information and

belief, why he intentionally postponed the plaintiff's appointment.

22.  The plaintiff asked Dr.HLA-PE-WIN how he was going to treat

the plaintiff's injury. Dr. HLA-PE-WJn told the plaintiff not

to put any weight on his left side. It was obvious to the

plaintiff. Plaintiff immediately understood that keeping his

weight off his left side would thwart the worsening of his

injury and asked him if he would write a prescription for

a walking cane. Plaintiff then asked Dr. HLA-PE-WJn if he

would prescribe a vitamin D supplement to help plaintiffs'

degenerative osteoarthritis, and if he would order the plaintiff

to get a bone mineral density test. Plaintiff explained to

Dr. HLA-PE-WJn his family history of rah rheumatism and the

circumstances surrounding the plaintiffs parents succumbing to

the disease. The plaintiff was concerned that if his disease went

untreated by Dr. HLA-PE-WJn that the plaintiff would succumb

to it too.

23. The plaintiff then asked Dr. HLA-PE-WJn if he would refer

the plaintiff to an outside qualified specialist. And upon

9.

information and belief that Dr. HLA-PE-WJN only has general

knowledge, and is not qualified as a specialist. Dr. HLA-PE-WJN

denied all of the plaintiff's requests. Dr. HLA-PE-WJN

also failed to conduct any physical examination of the

plaintiff's symptoms. Dr. HLA-PE-WJN denied medical

treatment to the plaintiff, and upon information and belief,

the defendant's actions seemed to be malicious and

intentionally deliberate toward the plaintiff.

### Deliberate Indifference

24. After Dr. HLA-PE-WJN had denied and or prescribed any

medical treatment plan, the plaintiff was desperately seeking

some type of relief, and asked Dr. HLA-PE-WJN if he would

provide the plaintiff with a medical permit for a chair.

The plaintiff explained that sitting in a chair provided

support to plaintiff's lower back and helped lessen the

plaintiff's acute pain emitting from the plaintiff's left hip.

Dr. HLA-PE-WIN denied that request too.

25. It was clear that the plaintiff was urgently seeking medical treatment. The plaintiff became more concerned that if Dr. HLA-PE-WIN continued to delay and deny treating the plaintiff's disease, especially Dr. HLA-PE-WIN knowing the plaintiff's age, family history of the disease, the radiological report coupled with the plaintiff's symptoms; the plaintiff's condition would continue to degenerate.

26. Dr. HLA-PE-WIN ignored all of the plaintiff's pleas for medical treatment, but Dr. HLA-PE-WIN saw fit to order the plaintiff get a second x-ray of his left hip. The plaintiff was incredulous as to why the defendant would order the plaintiff to get a second x-ray. Dr. HLA-PE-WIN's actions to continue to delay in treating the plaintiff's injury clearly demonstrates his deliberate indifference to the plaintiff's medical needs despite Dr. HLA-PE-WIN's knowledge of the plaintiff's serious

11.

degenerative disease, that if Dr. HLA-PE-WJn continued

not to treat the plaintiff it would likely put the plaintiff

at substantial risk of further injury.

27. On April 7, 2022, plaintiff filed a grievance with the

Inmate Grievance Resolution Committee (IGRC) for a chair

and on April 14, 2022, the plaintiff filed a Special

Accommodation request (Doccs form 2614B) requesting a

chair to help bring the plaintiff some relief. Exhibit 2 and 3.

28. On April 18, 2022, Dr. HLA-PE-WJn received the plaintiffs

Special Accommodation Request and indicated on the form that

the plaintiff had "no medical record on file", and that the

plaintiff had "no physical disability or any functional limitations."

Exhibit 3.

29. All of Dr.HLA-PE-WJn's claims were blatantly untrue.

Dr. HLA-PE-WJn's actions were clearly deliberate and he

intended too thwart the plaintiffs efforts to obtain any

type of remediation for the plaintiffs pain and suffering.

Furthermore, when DR.HLA-PE-WIN filed a false (medical report)

he had violated Education Law 6530(21), and engaged in conduct

evidencing moral unfitness to practice medicine, is a

violation of Education Law 6530 (20). DR. HLA-PE-WIN's

actions alone should shock one's moral consciousness

of fairness.

30. On April 27, 2022, Deputy Superintendent for Programs

denied the plaintiffs Special Accommodation Request.

She stated on the form that there was "no medical

need indicated". Her determination to deny the plaintiff

a chair was solely based on DR. HLA-PE-WIN's false

report. Exhibit 4

31. On May 3, 2022, the IGRC approved the plaintiffs request for a

chair, but on May 4, 2022, Superintendent McGuiness overturned It.

On May 17, 2022, the plaintiff appealed the Superintendents decision to

Central Organization Resolution Committee (CORC). Exhibits

5, 6 and 7.

32. On May 3, 2022, plaintiff writes to R. Farah, Dr. HLA-PE-wyn's

supervisor. Plaintiff made R. Farah aware of the plaintiffs

radiological report findings and how the plaintiffs' injury

was impacting the plaintiff's daily life functions; such as the

plaintiffs ability to walk, bend down, and stand for any length

of time without experiencing excruciating pain. Exhibit 8

33. The plaintiff had informed R. Farah that Dr. HLA-PE-wyn had

not treated the plaintiffs' injury in the means and the manner

of adequate medical care. The plaintiff request R. Farah to take

the appropriate action necessary to remedy the plaintiffs'

medical concerns with Dr. HLA-PE-wyn.

34. R. Farah failed to respond to the plaintiffs' letter, and upon

information and belief, his action not to intervene demonstrates

his deliberate indifference to the plaintiffs' rights, and his failure

14

to act on information provided by the plaintiff of the

unconstitutional practices that are taking place in the

infirmary by Dr. HLA-PE-WJN.

35. On June 3, 2022, plaintiff sends R. Farah another letter asking

him why he has failed to respond to the plaintiff and

intervene in resolving the plaintiffs' medical concerns. Upon

information and belief, the defendants' failure to take any

action in resolving the plaintiffs medical issues, R. Farah

was creating an environment in the infirmary that would

allow Dr. HLA-PE-WJN's wrongful actions to go unchecked, and that

he would be contributing in exacerbating the plaintiffs'

degenerative disease. Exhibit 9

36. On July 19, 2022, plaintiff received a letter from the prison

nurse administrator, RN/NA Marisa Ruiz. She had apologized

to the plaintiff for Dr. HLA-PE-WJN's failure to treat the

plaintiffs' medical issues, but she had assured the plaintiff

15.

that Dr. HLA-PE-WJn was going to schedule an appointment

with the plaintiff to address the plaintiff's injury within the

month. Dr. HLA-PE-WJn never scheduled an appointment

with the plaintiff. Exhibit 10

37. As of the filing of this civil lawsuit the plaintiff's injury

has not been treated and it has worsened. The plaintiff's

pain and suffering continues, and performing life's simplest

daily functions is a challenge. The plaintiff's disease will

continue to degenerate the longer it goes untreated. It's

a Constitutionally protected right that all incarcerated

individuals, at a minimum, receive adequate medical care;

however, the defendants in this civil lawsuit have totally

abrogated that right to the plaintiff, and has put the plaintiff

at substantial risk of further injury.

Course of Action

38. Plaintiff supports the following claims by reference

to the previous paragraphs of this complaint.

Count I

39. The deliberate indifference of defendants, R. Farah

and Dr. HLA-PE-WJn has deprived and continue to deprive

plaintiff's Constitutional right to medical treatment for

his degenerative disease constitutes a violation of the

plaintiff's Eighth and Fourteenth Amendments of the United

States Constitution.

Count II

40. Defendants, Dr. HLA-PE-WJn falsified the plaintiff's

medical condition on a DOCCS form demonstrating his

deliberate indifference to the plaintiff constitutes a

violation of the plaintiff's Eighth Amendment of the

United States Constitution.

Count III

41. Defendant, R. Farah's failure to intervene in Dr.HLA-PE-wan's

action not to treat the plaintiff's serious medical condition

17

after the plaintiff put R. Farah on constructive notice

constitutes a violation of the plaintiff's Fourteenth

Amendment of the United States Constitution.

Prayer For Relief

Wherefore the plaintiff respectfully prays this court:

1. Declare that the acts described herein violated plaintiff's

rights under the Constitution and the laws of the United

States.

2. The court enter a judgment in favor of the plaintiff for

compensatory and nominal damages, as allowed by law, against

each defendant jointly and severally for all the pain and

suffering the plaintiff endured and continues to endure.

And the court demand the defendants treat the plaintiff's

injury and make the plaintiff financially whole for all

expenses incurred in filing this lawsuit.

3. Order such additional relief as this court may deem just

and proper.

Respectfully submitted this 25 day of October, 2022.

Vincent Verdi

DIN # 19A2467
Shawangunk Correctional Facility
200 Quick Road
Wallkill, New York 12589

Pursuant to 28 USC 1764, I declare and verify under penalty

of perjury under the laws of the United States of America

the foregoing is true and correct.

Vincent Verdi

Notary: Sworn before me this 25 day of October, 2022.

Notary Signature

SHEILA L EULL
STATE OF NEW YORK
NOTARY PUBLIC
Qualified In Orange County
01EU6421928
MY COMMISSION EXPIRES 9/13/2025

19

FROM :                                    FAX NO. :                          Jan. 05 2002 05:20AM  P3

**State of New York**
**Department of Corrections and Community Supervision**

☐ **Urgent**
☒ **Routine**

**REQUEST FOR RADIOLOGICAL EXAMINATION**

Inmate: _Vincent_ _Verdi_ DIN: _19 A 246 7_ DOB: ~~7-5-55~~
First Name          Last Name

Facility: _SWT_ Date Received: _12/14/21_ Location: _B-1-b 045_

Transport/Ambulation Assistance/Precautions Needed: _NA_

Reason for X-ray/pertinent medical history: _Xy of Knee both ( Hy_
_c/o PAIN / STIFFNESS IN HIPS + KNEES_

Area X-Rayed: _Hip + Knee ( both Xy )_

Ordered By: _____ Date: _12/13/21_ Time: _____
Provider Name

Technologist: _J OE G_ Date/Time of exam: _12/14/21_

Report/Findings: _____

Both hips AP & frog lateral views each side shows no recent fracture, dis-
location or avascular necrosis either side. Narrowing joint space with
sclerosis & osteophyte formation mild in Rt hip & moderate in Lt hip.
9mm osseous fragment seen inferior to Lt pubic arch consistent with old
avulsion injury of ischial tuberosity (hamstring) with fragment sharply
defined & displaced inferiorly.
IMP: DEGENERATIVE OSTEOARTHRITIS BOTH HIPS MILD RT HIP & MODERATE LT HIP.
     OLD AVULSION INJURY LT ISCHIAL TUBEROSITY.

Both knees 3 views each side shows no fracture, dislocation or joint effusion.
Narrowing of all joint compartments with bony productive change moderate
in Rt knee involving to greater extent medial joint compartment & mild Lt
knee. 3mm posterior joint body Lt knee.
IMP: MODERATE DEGENERATIVE TRICOMPARTMENTAL OSTEOARTHRITIS RT KNEE
INVOLVING TO GREATER EXTENT MEDIAL JOINT COMPARTMENT.
     MILD DEGENERATIVE TRICOMPARTMENTAL OSTEOARTHRITIS LT KNEE ASSOCIATED
WITH 3MM POSTERIOR JOINT BODY. NO PRIOR STUDY.

REVIEWED BY (init): _MF 1/5/22_ DATE
☐ NO ACTION IS REQUIRED AT THIS TIME
☐ REPORT TO SICK CALL
☒ FOLLOW UP WILL BE ARRANGED WITH PRIMARY PROVIDER
☐ FOLLOW UP WILL BE ARRANGED WITH A SPECIALIST
☒ NOTIFICATION FORM COMPLETED AND DISTRIBUTED

Read by: _RJMueller, MD_ Date: _12/15/21_

White Copy: Ambulatory Health Record/X-Ray section      Yellow Copy: X-Ray Folder
Form 3108 (11/16)

EXHIBIT 1

April 7, 2022

To: Mr. Cunningham

    IGRC

From: Vincent Verdi  19A2467  B1 104

RECEIVED
22
BY 0152-22

Background Information:

On April 7, 2022, I met with Dr. HLA-PE-WJn, medical license number 225440. After discussing my medical concerns with him I have come to the conclusion that his actions were deliberately indifferent toward me and I question with great concern his medical competency in treating me and the many other patients under his care at Shawangunk. I believe Dr. HLA-PE-WJn has continually violated my rights under Eighth and Fourteenth Amendments as well as Title II of the Americans with Disabilities Act (ADA) 42 USC §§ 12101 et seq. I am 70% disabled military veteran who suffers from thoracic and lumbar facet joint compression. Every time that I have met with him he is more concerned with protecting himself from a legal lawsuit than in treating and listening to my medical concerns. All my conversations with him he has been extremely defensive in responding to the few questions that he permits me to ask him. It's not a positive open dialogue that any individual would expect between a patient and their primary care provider.

Medical Grievance:

I have a fractured left hip and that diagnosis has been confirmed by a radiologist and the report is in my medical file. I tried to explain to him that my left hip fracture coupled with my back pain limits my major life activities such as standing for long periods of time, walking and bending.

EXHIBIT #2

(22)

1/152-22

I further explained that sitting in a chair with my back supported alleviates my hip and back pain and as such I am requesting him to provide me a medical permit to have a chair in my cell. Its clearly not a security concern because all double bunk cells have chairs and those that have legitimate medical issues have them too. He totally dismissed my request and ordered another x-ray of my hip to confirm what the radiologist already had confirmed. His actions are malevolent and raise to the level of medical malfeasance. In essence he is postponing my medical treatment that is only exacerbating my pain. His actions clearly fall within the legal threshold standard in meeting the subjective and objective prongs of deliberate indifference under the Fourteenth Amendment and him postponing medical treatment he is violating my Eighth Amendment.

I currently have a medical permit to remain on the bottom tier and I am a feed in because navigating the stairs would be dangerous for me.

Resolution Requested:
I want him to provide me a permit for a chair in my cell.

Vincent Verdi
19A2467

cc: Arthur Gage
Attorney-at-law
Tucson, Arizona

Revised (7/11)
Form #2614B
COPY LOCALLY
AS NEEDED

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

## REQUEST FOR REASONABLE ACCOMMODATION

_Shawangunk_ _____ Correctional Facility

| Inmate's Name | DIN# | Date |
|---|---|---|
| VINCENT VERdi | 19A2467 | April 14, 2022 |

**INMATE'S REQUEST**

I request reasonable accommodation to participate in the following program and/or service: N/A

I am limited in my ability to (explain disability or limitation): _Stand walk and bend because of my left hip fracture and my theracea and lumbor compression limits my daily activities. I am a 70% disabled combat veteran._

The accommodation requested is: _For a chair in my cell_

(Sign and forward to the Deputy Superintendent for Program Services) _[signature]_

Inmate's Signature

**REC'D BY DSP**

_LBrennan_ _____ _BBrennan_ _____ 4/15/22
(DSP Name)            (Signature)            Date

**MEDICAL VERIFICATION**

Disability _____ NONE

Functional limitations _____ NONE

No medical verification is on file. Follow-up appointment scheduled?   ☐ yes   ☒ no

Date inmate notified of pending medical evaluation/consult: _____

_[signature]_ Hla-Pe-Win MD _____ 4/18/22
(Medical staff name - title)     (Signature)            Date

**REASONABLE ACCOM. DETERMINATION**

The above requested reasonable accommodation has been:   ☐ Approved   ☐ Modified   ☒ Denied

The specific accommodations approved are: _____

Explanation of modification or denial: _No medical need indicated_

_[signature]_ _BBrennan_ _____ 4/27/22
(Inmate's Signature)     (DSP or designee signature)     Date

**INMATE RECEIPT**

☐ I agree      ☑ I disagree with this determination.

I understand my right to file a grievance in accordance with Directive #4040, "Inmate Grievance Program"

Signature _[signature]_ _____ Date 4/29/22

Original - Guidance Folder
Copies - Inmate, Superintendent, Medical, Parole, ADA Coordinator (Central Office)

EXHIBIT 83

Revised (7/11)
Form #2614B
COPY LOCALLY
AS NEEDED

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

## REQUEST FOR REASONABLE ACCOMMODATION

_Shawangunk_ _____ Correctional Facility

| Inmate's Name | DIN# | Date |
|---|---|---|
| VINCENT VERDI | 19A2467 | April 14, 2022 |

**INMATE'S REQUEST**

I request reasonable accommodation to participate in the following program and/or service: N/A

I am limited in my ability to (explain disability or limitation): Stand walk and bend because of my left hip fracture and my thoracic and lumbar compression limits my daily activities. I am a 70% disabled combat veteran.

The accommodation requested is: For a chair in my cell

(Sign and forward to the Deputy Superintendent for Program Services)     _[signature]_
                                                                    Inmate's Signature

**REC'D BY DSP**

L Brennan _____ _[signature]_ Brennan _____ 4/15/22
(DSP Name)            (Signature)                    Date

**MEDICAL VERIFICATION**

Disability     NONE

Functional limitations     NONE

No medical verification is on file. Follow-up appointment scheduled?     ☐ yes     ☒ no

Date inmate notified of pending medical evaluation/consult: _____

_[signature]_ Hla-Pe Win MD          4/18/22
(Medical staff name - title)     (Signature)                    Date

**REASONABLE ACCOM. DETERMINATION**

The above requested reasonable accommodation has been:     ☐ Approved     ☐ Modified     ☒ Denied

The specific accommodations approved are: _____

Explanation of modification or denial: no medical need indicated

_[signature]_          _[signature]_ Brennan          4/27/22
(Inmate's Signature)     (DSP or designee signature)          Date

**INMATE RECEIPT**

☐ I agree     ☒ I disagree with this determination.

I understand my right to file a grievance in accordance with Directive #4040, "Inmate Grievance Program"

Signature _[signature]_          Date 4/29/22

Original    - Guidance Folder
Copies      - Inmate, Superintendent, Medical, Parole, ADA Coordinator (Central Office)

EXHIBIT 84

| NEW YORK STATE Corrections and Community Supervision | GRIEVANCE NO. 0759-33 | HEARING DATE 5-3-2022 |
|---|---|---|
| | GRIEVANT NAME VERDI V | DIN 19A3467 |
| INCARCERATED GRIEVANCE PROGRAM | FACILITY SHAWANGUNK | HOUSING UNIT B1-104 |
| IGRC HEARING RESPONSE | HELD IN ABSENTIA ☐ YES ☑ NO   If yes, why: | |

<u>Response of IGRC:</u> Chairs have been allowed in double bunks for years with no mention of a security risk. IT's request is reasonable and should be granted.

Chairperson: _____

IGRC Members: _____
V. Parker
K. King

Date Returned to Grievant: _____

Appeal:

If you wish to appeal, please check the appropriate box below and return within 7 calendar days to the IGRC office at the facility where the grievance was filed.*

☐ I disagree with the IGRC response and wish to appeal to the Superintendent.

☐ I have reviewed the Deadlocked response. Refer to Superintendent.

☑ I agree with the IGRC response and wish to appeal to the Superintendent.

☐ I want to apply to the IGP Supervisor for review of the IGRC dismissal.

Grievant Signature: _____   Date: 5/3/22

*An exception to the time limit may be requested under Directive #4040, § 701.6 (g).

**To be completed by Grievance Clerk**

Grievance Clerk Signature: _____   Date Received: _____

Date Forwarded to Superintendent For Action: _____

FORM 2131 (Reverse) (12/21)

EXHIBIT 5

| NEW YORK STATE Corrections and Community Supervision | GRIEVANCE NO. SHG-0152-22 | DATE FILED 04/13/22 |
|---|---|---|
| | FACILITY Shawangunk Correctional Facility | POLICY DESIGNATION |
| **INMATE GRIEVANCE PROGRAM** | TITLE OF GRIEVANCE Wants standard chair for cell use | CLASS CODE 22 |
| **SUPERINTENDENT** **Thomas McGuinness** | SUPERINTENDENT'S SIGNATURE *[signature]* | DATE 05/04/22 |
| GRIEVANT Verdi, V. | DIN 19-A-2467 | HOUSING UNIT B1-104 |

Grievant complains his medical issues cause him discomfort. Grievant says a chair will help alleviate his discomfort. He would like a medical permit to have a standard chair in his cell.

The facility Nurse Administrator R…, determined at this time a chair in the cell is a security and safety risk.

Grievance is denied.



---

## APPEAL STATEMENT

If you wish to refer the above decision of the Superintendent, please sign below, and return this copy to your Inmate Grievance Clerk. You have seven (7) calendar days from receipt of this notice to file your appeal. * Please state why you are appealing this decision to C.O.R.C.

I will appeal the Superintendents decision to C.O.R.C. for a myraid of legal violations by this administration and for medical malpractice by DR. HLA-PE-WIN, license number 225480,

_____                                   5/11/22
GRIEVANT'S SIGNATURE                                           DATE

_____                                   _____
GRIEVANCE CLERK'S SIGNATURE                                    DATE

*An exception to the time limit may be requested under Directive #4040, section 701.6 (g)
Form 2133 (02/15)

EXHIBIT # 6

MAy, 17, 2022

To: CORC
   Albany, New York

From: Vincent Verdi   DIN # 19A2467
      Shawangunk Correctional Facility
      PO Box 700
      Wallkill, N.Y. 12589

Dear C.O.R.C.:

I am submitting this appeal for the committee's
consideration in overturning Superintendent McGuiness
decision in denying me a medical permit for a chair
in my cell to thwart my pain due to my left hip fracture.
Chairs do no present any security concerns. Incarcerated
individuals with legitimate medical concerns are granted
medical permits. Furthermore, incarcerated individuals that
have no medical issue that reside in cells with double
bunk beds all have chairs. Clearly the DOCCS and the
administration at Shawangunk finds chairs do not present
any security concerns.

I remain sanguine that after you examine all the
evidence that I have submitted to your committee
you will provide me a fair and just decision that is
guided by your moral conscience. And overturn the
Superintendents decision and grant me the chair.

In October 2021, I met with Dr. HLA-PE-WIN to discuss
with him my constant left hip pain and how it was
impeding my daily life functions. Such as my ability

EXHIBIT 57

Vincent Verdi DIN # 19A2467    2.

to walk, bend, and stand for long periods of time. He ordered an x-ray. A month later my hip was x-rayed and on December 15, 2021, Dr. Muller a radiologist found that I had a 9mm osseous fragment seen inferior to my left pubic arch consistent with avulsion injury of ischial tuberosity with fragment sharply defined and displaced inferiorly. He also found that my left hip had moderate degenerative osteoarthritis. See enclosed Radiological report.

The following day I submitted a sick call slip requesting to be seen by Dr. HLA-PE-WIN to discuss my medical treatment options. I received an appointment to see him on April 7, 2022. Eight weeks later! On April 7, 2022, I met with Dr. HLA-PE-WIN. At this point in time I was in extreme pain and walking, bending, and standing was very challenging for me, but I found sitting in a chair with my back supported alleviated all of my hip pain. Whereas sitting on my bed or lying down did nothing to impede my pain. I asked him for a medical permit for a chair in my cell but he denied it without any explanation. I asked him to order a bone mineral density test and prescribe a vitamin D supplement for me but he denied that too.

On April 7, 2022, I filed a grievance and on May 3, 2022, I met with the grievance committee. They approved my request for a chair in my cell and the reviewing Sargeant stated that my request was not unreasonable based on my current medical condition and chairs do not present any security concerns. See enclosed IGRC findings.

3.

Vincent Verdi DIN # 19A2467

On April 10, 2022, I filed a Special Accommodation Request (Doccs form 2614 B, enclosed) with the administration requesting a chair in my cell. My request was ultimately denied because Dr. HLA-PE-WIN claimed on the Doccs form that I had no disability or any functional limitations. I was flabbergasted by his affirmation on the form because his assessment was in direct contradiction to Dr. Miller's report. He in essence perjured himself which is a criminal offense.

On May 4, 2022, I received Superintendents McGuiness denying my request stating the Nurse Administrator "determined at this time a chair in the cell is a security and safety risk". I was incredulous by his justification to deny the chair because the Nurse Administrator was not involved in this decision process to my knowledge. See enclosed form.

In closing, I filed a complaint against Dr. HLA-PE-WIN with the New York State Department of Health, Office of Professional Medical Conduct.

Respectfully Submitted,
Vincent Verdi

cc: Arthur V. Gage
    Attorney-at-law

MAy 3, 2022

DS Farah:

I am dismayed as to why you have consistently ignored all of my letters to you regarding my Health Care Proxy form. I have not received it and I explained to you that after I reviewed my medical records I discovered the form was missing. I suspect it was either deliberately not placed or removed from my medical file.

I don't know if you are aware but the form is a "legal document" that Doccs is required "by law" to provide me and at my request made part of my medical record. I have also sent numerous letters to the Nurse Administrator, DR. HLA-PE-WIN, and went so far as putting in a sick call slip in my attempt to speak to someone about this but all to no avail.

This is very unsettling to me and I don't understand why you and this administration continue to abrogate my legal rights.

I also want to bring to your attention another very troubling matter. On April 7, 2022, I met with DR. HLA-PE-WIN about the tear of my pubic arch and how painful it was and that it was impacting my daily life activities such as: standing, walking, and bending. I found that when I am sitting in a chair it supports my back and greatly alleviates my acute pelvic pain. I requested DR. HLA-PE-WIN provide me a medical permit for a chair in my cell but he denied my request. I then submitted a Special Accommodation Request but he perjured himself on the form and claimed that I had no functional limitations or

EXHIBIT

2.

disability. Whereas the radiological report in my medical file dated 12/15/21 states that I have "9mm fragment to my left pubic arch consistent with avulsion (forcibly tearing) of my ischial (pubic bone) with a fragment sharply defined and displaced inferiorly". I have a copy of the report.

His false statement by affirmation on a Docos form is perjury and as such is a criminal offense. So then I ask you, why would DR. HLA-PE-WIN lie?

His outright lie meets the subjective prong of deliberate indifference whereas he is aware that denying the chair will put me at substantial risk of greater injury. Instead he ordered another x-ray of my hip only delaying the treatment of my medical needs in the means and manner of the delivery of adequate health care is a violation of Title II of the American Disabilities Act and the Civil Rights of Institutionalized Persons Act, notwithstanding, a violation of my Eighth and Fourteenth Constitutional protections.

I recognize DR. HLA-PE-WIN is hiding behind his official immunity but it is my hope you will not be complicit in his medical malfeasance. I have a legitimate medical issue.

Respectfully submitted,
Vincent Verdi - DIN # 15A2463

cc: Arthur Gage
attorney-at-law
bar # 009692

June 3, 2022

DSA Farah:

On May 3, 2022, I wrote and made you aware that DR. HLA-PE-WIN, has failed to treat the fracture of my left hip and how it was impacting my daily activities such as: walking, bending, and standing for any length of time. I also made you aware that I had filed a Special Accommodation Request for a chair, but it was denied by the Administration solely based on DR. HLA-PE-WIN's false statements.

He stated (Docces form 2644B) that I had no physical disability or any physical limitations and went so far to state that there was no record of my injury in my medical file. His false statements are punishable under N.Y.S. Penal Code 210.45, and his actions clearly demonstrate his deliberate indifference toward me in treating my injury in the means and manner of the delivery of adequate health care.

Notwithstanding, his false inputs into question his ethical and
                                    statements
moral conduct as a physician treating patients at any correctional facility. You are creating an environment that allows him to continue to hide behind his special immunity and to act with deliberate indifference toward me and the many others under his care.

It is my hope that you will take the necessary steps to remedy this problem and have him grant my medical permit for a chair.

Respectfully submitted
Vincent Verdi
DIN# 19A 2467

EXHIBIT #9



## NEW YORK STATE
# Corrections and
# Community Supervision

**KATHY HOCHUL**
Governor

**ANTHONY J. ANNUCCI**
Acting Commissioner

B1-109

## <u>M E M O R A N D U M</u>

To:    I/I Verde19A2467

From:   Marisa Ruiz, RN/NA

Subject: Letters regarding Lower Extremities

Date:   07/19/22

Dear Mr. Verdi,

I am writing you regarding the letter you mailed to me in June. I am sorry that your medical issues were not addressed in your last visit with Dr. Win. I have discussed your issues with Dr. Win, and you are scheduled to meet with him within the month to discuss your issues with your hip, lower extremities, and daily living skills. I know in the past you requested to have a chair in your room. Due to safety issues and hazards we are unable to accommodate this request, but you can discuss this with Dr. Win at your next scheduled appointment.

Thank you for your time and patience and we look forward to helping you with your current medical issues to maximize your health and wellness.

Thank you.

Marisa Ruiz, NA

cc: file DSA

EXHIBIT 10