**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

_____

VINCENT VERDI,

                                      Plaintiff,

   v.

HLA-PE WIN,[1]

                                      Defendant.

No. 9:22-CV-00825
(BKS/CFH)

_____

**APPEARANCES:**

VINCENT VERDI
19-A-2467
Shawangunk Correctional Facility
P.O. Box 700
Wallkill, New York 12589
Plaintiff pro se

Attorney General for the
State of New York
The Capitol
Albany, New York 12224
Attorney for defendant

**OF COUNSEL:**

OLIVIA R. COX, ESQ.
Assistant Attorney General

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[2]

Plaintiff pro se Vincent Verdi ("plaintiff"), an inmate who was, at all relevant times, in the custody of the New York State Department of Corrections and Community

---

[1] The Court terminated the lead defendant following section 1915 review of plaintiff's original complaint. See Dkt. No. 6 at 12-15; see also Dkt. No. 10 at 5-7 (reviewing plaintiff's amended complaint and similarly dismissing any claims against the lead defendant). Accordingly, the Clerk is respectfully directed to amend the caption to reflect Dr. Hla-Pe Win as the only named defendant in this action.

[2] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that defendant Dr. Hla-Pe Win ("defendant") violated his constitutional rights under the Eighth Amendment.  See Dkt. No. 9 ("Am. Compl.").  Presently before the Court is defendant's motion for summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").  See Dkt. No. 21.  Plaintiff opposed the motion and filed a cross-motion for summary judgment.  See Dkt. No. 25.  Defendant opposed the cross-motion.  See Dkt. No. 28.  For the following reasons, it is recommended that both defendant's motion and plaintiff's cross-motion be denied.

## I. Background

On review of defendant's motion, the facts will be related herein in the light most favorable to plaintiff as the nonmoving party.  See Rattner v. Netburn, 930 F.2d 204, 209 (2d Cir. 1991) ("In assessing the record . . . to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought.").  On review of plaintiff's cross-motion, the facts will be related in the light most favorable to defendant.  See infra Section III.

### A. Plaintiff's Factual Assertions

At all relevant times, plaintiff was an inmate confined at Shawangunk Correctional Facility ("Shawangunk C.F.").  See Am. Compl. at 2.[3]

Plaintiff is a sixty-seven-year-old man, "who suffers from degenerate osteoarthritis of both hips, and . . . tricompartmental osteoarthritis of his right knee."  Am. Compl. at 3-4,

---

[3] Citations are to the pagination generated by CM/ECF, located in the header of each page.

¶10.  "On or about October 2021, the plaintiff submitted a sick call slip requesting to see the prison physician to address the excruciating pain that [he] was experiencing from his left hip."  Id. at 4, ¶12.  "Days later, the plaintiff met with Dr. Hla-Pe Win and [told] him how the pain was effecting his daily activities in a substantial way[, such as] impacting [his] ability to walk, bend down, and stand for any length of time without the infliction of excruciating pain."  Id.  Dr. Hla-Pe Win "ordered the plaintiff to get an x-ray of his left hip[,]" but "did not conduct any physical examination[,] ask the plaintiff about his family history . . . [,] or provide the plaintiff [with] an interim medical treatment plan[.]"  Id. at 4-5, ¶13.  "On or about February 2022, the plaintiff['s] left hip was x-rayed at [Shawangunk C.F.] infirmary."  Id. at 5, ¶15.

On or about February 2022, a nonparty nurse practitioner conducted plaintiff's annual physical examination, and plaintiff asked her if a "radiological report" was in his medical file.  Am. Compl. at 5, ¶16.  The nurse confirmed that it was.  See id.  The radiologist, in his report dated December 15, 2021, "determined the plaintiff had suffered a 9mm osseous fragment seen inferior to the left pubic arch, consistent with an avulsion injury of the ischial tuberosity with a fragment sharply defined and displaced inferiorly."  Id. at 5-6, ¶16-17.  "The radiologist had also determined that the plaintiff [was] suffer[ing] from a disease known as degenerative osteoarthritis of his left hip and knee."  Id. at 6, ¶17.  "Dr. Hla-Pe Win had reviewed the [ ] report on January 15, 2022[,]" and indicated that "follow-up will be arranged with a primary provider."  Id.

"The day following plaintiff's examination, he submitted another sick call slip requesting an immediate appointment with Dr. Hla-Pen Win to discuss the radiologist['s] report and what medical treatment plan he would prescribe for the plaintiff."  Am. Compl.

3

at 6-7, ¶18.  Roughly one week later, plaintiff "receive[d] an appointment to see Dr. Hla-Pe Win for April 7, 2022."  Id. at 7, ¶19.  Plaintiff "was dumbfounded as to why Dr. Hla-Pe Win would schedule the appointment so far off" and sent "numerous sick call requests to be seen much sooner, explaining . . . that [his] symptoms were getting worse[.]"  Id. at 7, ¶¶19-20.  "It was clear that plaintiff urgently needed medical attention," yet he "was informed that he had to wait until his scheduled appointment on April 7, 2022."  Id. at 7-8, ¶20.

"On April 7, 2022, plaintiff met with Dr. Hla-Pe Win," where he "reiterated his symptoms . . . and asked him why he saw fit to delay in consulting with the plaintiff when he had reviewed the plaintiff's radiological report on January 5, 2022."  Am. Compl. at 8, ¶21.  Dr. Hla-Pen Win "became very defensive and berated the plaintiff" and seemed "very surprised that the plaintiff knew that he had reviewed the . . . radiological report[.]"  Id.  Dr. Hla-Pe Win then discussed a treatment plan with plaintiff and told him "not to put any weight on his left side."  Id. at 8-9, ¶22.  Plaintiff "immediately understood" and asked Dr. Hla-Pen Win "if he would write a prescription for a walking cane."  Id. at 9, ¶22.  Plaintiff also requested a prescription for a vitamin D supplement to "help [his] degenerative osteoarthritis," a "bone mineral density test," a referral "to an outside qualified specialist," and a "medical permit for a chair" that would provide support for his lower back.  Id. at 9-10, ¶¶22-24.  Dr. Hla-Pe Win denied all of plaintiff's requests, and instead ordered "a second x-ray of [plaintiff's] left hip."  Id. at 9-11, ¶¶23-26.

"On April 7, 2022, plaintiff filed a grievance with the Inmate Grievance Resolution Committee (IGRC)" against Dr. Hla-Pe Win.  Am. Compl. at 12, ¶27; see also Dkt. No.

4

25-2 at 6.  "[O]n April 14, 2022, the plaintiff filed a Special Accommodation Request . . . requesting a chair to help bring the plaintiff some relief."  Am. Compl. at 12, ¶27.  "On April 18, 2022, Dr. Hla-Pe Win received the plaintiff's Special Accommodation Request and indicated on the form that the plaintiff had 'no medical record on file,' and that the plaintiff had 'no physical disability or any functional limitations.'"  Id. at 12, ¶28.  "On April 27, 2022, [the] Deputy Superintendent for Programs denied the plaintiff's Special Accommodation Request" for the chair, "stat[ing] on the form that there was 'no medical need indicated.'"  Id. at 13, ¶30.

On May 3, 2022, the IGRC "conduct[ed] a hearing with the plaintiff regarding [his] grievance."  Dkt. No. 25-2 at 6.  "[T]he IGRC approved the plaintiff's request for a chair, but on May 4, 2022, Superintendent McGuinness overturned it."  Am. Compl. at 13, ¶31. "On May 11, 2022, the plaintiff appeal[ed the] Superintendent's decision to" the Central Office Review Committee ("CORC").  Dkt. No. 25-3 at 3.  The Inmate Grievance Program ("IGP") Supervisor, however, did not send the plaintiff's appeal to CORC until July 14, 2022.  See id. at 4.

"On July 19, 2022, plaintiff received a letter from the prison nurse administrator"; she "apologized to the plaintiff for Dr. Hla-Pe Win's failure to treat [his] medical issues" and "assured the plaintiff that Dr. Hla-Pe Win was going to schedule an appointment with [him] within the month."  Am. Compl. at 15-16, ¶36.  However, "Dr. Hla-Pe Win never scheduled an appointment with the plaintiff."  Id. at 16, ¶36.  "As of [July 29, 2022,] the filing of this civil lawsuit, the plaintiff's injury has not been treated and it has worsened." Id. at 16, ¶37.  "The plaintiff's pain and suffering continues, and performing life's simplest daily functions is a challenge."  Id.

### B. Defendant's Factual Assertions[4]

"At all times relevant, [p]laintiff was and continues to be housed at Shawangunk C.F." Dkt. No. 21-1 at 1, ¶5. "Shawangunk C.F. provided and continues to provide incarcerated individuals with full access to the [IGP]." Id. at 1-2, ¶5. Plaintiff filed a grievance with the IGRC on April 13, 2022, regarding his medical indifference claims against Dr. Hla-Pe Win. See id. at 3, ¶14. Plaintiff appealed the IGRC decision, but "did not wait the requisite thirty (30) days for CORC to issue a final disposition before commencing this law suit [sic]." Id. at 3, ¶15.

### II. Defendant's Motion for Summary Judgment

Defendant contends that he is entitled to summary judgment because plaintiff "failed to exhaust his administrative remedies before commencing this action[.]" Dkt. No. 21-8 at 5; see Dkt. No. 28 at 7. Defendant alternatively requests an exhaustion hearing "to determine whether [p]laintiff properly exhausted his administrative remedies." Dkt. No. 21-8 at 9. Plaintiff maintains that he exhausted his administrative remedies. See Dkt. No. 25-2 at 8; see also Am. Compl. at 3, ¶8.

### A. Legal Standard

A motion for summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of demonstrating the absence of disputed material facts by citing to "the record, including depositions, documents, electronically stored information, affidavits or declarations,

---

[4] In support of his motion, defendant filed a Statement of Material Facts. See Dkt. No. 21-1.

6

stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c).  A fact is material if it "might affect the outcome of the suit," as determined by the governing substantive law; a "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

If the moving party meets this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248 (citation omitted); see Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  "When ruling on a summary judgment motion, the district court . . . must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  Still, the nonmoving party cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) (citing Quarles v. Gen. Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985) (per curiam)); see also Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) ("[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist.") (citation omitted).

Where a party seeks judgment against a pro se litigant, or a pro se litigant moves for summary judgment, the Court must afford the pro se litigant special solicitude.  See Treistman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (per curiam).  As the Second Circuit explained,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must be

construed "liberally," and that such submissions must be read to raise the strongest arguments that they "suggest[.]" At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[]" . . . .

Id. (citations omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, . . . a court is obligated to construe his pleadings liberally.") (citations and quotation marks omitted).

### B. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust any available administrative remedies before bringing an action for claims arising out of their incarceration. See 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Exhaustion is required even where the prisoner seeks relief not available in the administrative grievance process, such as money damages. See id. at 524. "To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he is incarcerated." Adams v. Annucci, 537 F. Supp. 3d 475, 477-78 (W.D.N.Y. 2021); see Jones v. Bock, 549 U.S. 199, 218 (2007) (explaining that the applicable procedural rules "are defined not by the PLRA, but by the prison grievance process itself").

"Failure to exhaust administrative remedies under the PLRA is an affirmative defense, and thus the defendant[ has] the burden of proving that [the plaintiff's] claim has not been exhausted[.]" Key v. Toussaint, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).  A defendant satisfies this burden by "establishing . . . that a grievance process exists" and that the plaintiff failed to utilize the grievance procedure. Hubbs v. Suffolk Cnty. Sheriff's Dep't, 788 F.3d 54, 59 (2d Cir. 2015) (citing Mojias v. Johnson, 351 F.3d 606, 610 (2d Cir. 2003), and Snider v. Melindez, 199 F.3d 108, 114 (2d Cir. 1999)).  "However, once a defendant has produced reliable evidence that such remedies were generally available, and the plaintiff nevertheless failed to exhaust those remedies, the plaintiff must then counter the defendant's proof by showing that, as to him or her, the remedy was unavailable." Coleman v. Nolan, No. 9:15-CV-40 (ATB), 2018 WL 4732778, at *4 (N.D.N.Y. Oct. 2, 2018) (citing Smith v. Kelly, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013)).[5]

Here, there is no genuine dispute that, at all relevant times, DOCCS had in place a three-step inmate grievance program. See N.Y. COMP. CODES R. & REGS. tit. 7 ("7 N.Y.C.R.R."), § 701.5.  First, the inmate must file a complaint with the Inmate Grievance Resolution Committee ("IGRC") within twenty-one calendar days of the alleged incident. See id. § 701.5(a).  Second, the inmate may appeal IGRC's decision to the facility's Superintendent. See id. § 701.5(c)(1).  Third, the inmate may appeal the Superintendent's decision to the Central Office Review committee ("CORC"). See id. § 701.5(d)(1)(i).  The CORC is required to "review each appeal, render a decision on the grievance, and transmit its decision to the facility . . . within 30 calendar days from

---

[5] All unpublished decisions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

the time the appeal was received." Id. § 701.5(d)(3)(ii). "There is also an expedited procedure for complaints raising bona fide issues of harassment or other misconduct by DOCCS staff, which bypasses the IGRC, and initially refers the grievance to the facility superintendent or his designee for prompt review, investigation, and decision." Ferguson v. Mason, No. 9:19-CV-927 (GLS/ATB), 2021 WL 862070, at *2 (N.D.N.Y. Jan. 7, 2021) (citing 7 N.Y.C.R.R. § 701.8), report and recommendation adopted, 2021 WL 531968 (N.D.N.Y. Feb. 12, 2021).

Defendant argues that this action should be dismissed because plaintiff failed to exhaust administrative remedies available to him. See Dkt. No. 21-8 at 8-9. Defendant acknowledges that "[p]laintiff filed a timely grievance on April 13, 2022 in relation to [the] allegations [presented in this action]," which the Superintendent denied on May 4, 2022. Id. at 8 (citing Dkt. No. 21-5 at 9). Defendant contends that, although plaintiff appealed the Superintendent's denial to the CORC, he "had not yet received a final decision from CORC nor waited the required thirty (30) days for the CORC to issue a final decision before commencing this lawsuit." Id. Defendant argues that "[p]laintiff needed to complete exhaustion 'prior to the time the action was commenced.'" Id. (quoting McCants v. Cannon, No. 9:08-CV-616 (LEK/DEP), 2008 WL 4936821, at *4 (N.D.N.Y. Nov. 18, 2008)).

Defendant has submitted sworn declarations from Michael Cunningham, the IGP Supervisor at Shawangunk C.F., and Rachel Seguin, the Director of the IGP for DOCCS. See Dkt. Nos. 21-3, 21-6. In his declaration, Cunningham notes that plaintiff "filed a facility-level grievance at Shawangunk C.F. . . . on April 13, 2022," which "was

closed at the Superintendent level with an unfavorable response on May 11, 2022."[6] Dkt. No. 21-3 at 5, ¶17.  Cunningham states that "[p]laintiff appealed this matter to CORC, and it was received on July 21, 2022"; thus, "CORC had until to [sic] August 21, 2022 to respond to [p]laintiff's grievance."  Id. at 5, ¶¶18-19.  Cunningham declares that "[p]laintiff commenced this lawsuit . . . twenty-four (24) days before the thirty (30) day CORC deadline to respond had expired."  Id. at 5, ¶20.  Seguin similarly declares that "CORC received [plaintiff's] appeal . . . on July 21, 2022" and, because plaintiff "did not wait the required 30 days for CORC to issue a final disposition before commencing this action, [he] failed to fully exhaust [his] administrative remedies as required by [the PLRA]."  Dkt. No. 21-6 at 4-5, ¶¶13-16.

Plaintiff concedes that he "filed his [complaint] before CORC rendered their final decision."  Dkt. No. 25-2 at 4.  However, plaintiff maintains that he exhausted his administrative remedies because CORC did not decide his appeal within the required thirty days.  See id. at 10-12.  Plaintiff asserts that he filed a grievance with the facility IGP on April 7, 2022, and the IGRC held a hearing on May 3, 2022.  See Dkt. No. 25-2 at 6.  Plaintiff states that, after the IGRC denied his grievance on May 3, 2022, he appealed that decision to the Superintendent that same day.  See Dkt. No. 25-3 at 3. Plaintiff further states that the Superintendent denied his grievance, and he appealed that decision to the CORC on May 11, 2022.[7]  See id.  Plaintiff contends that, although

---

[6] According to the documents attached to Cunningham's declaration, the Superintendent denied plaintiff's grievance on May 4, 2022.  See Dkt. No. 21-5 at 9.
[7] In his amended complaint, however, plaintiff states that he appealed the Superintendent's decision to CORC on May 17, 2022.  See Am. Compl. at 13, ¶31; see also Am. Compl. at 27-29 (letter addressed to CORC, dated May 17, 2022).  However, throughout his opposition papers to defendant's motion for summary judgment, plaintiff states that he appealed the Superintendent's decision to CORC on May 11, 2022.  See Dkt. No. 25-2 at 6, 12; see also Dkt. No. 25-3 at 3.  "Because the [May 11 date] construe[s] the record in the light most favorable to [p]laintiff, suggesting the longest period of time waited before commencing suit," the undersigned will consider such date to be the date in which plaintiff claims to have

11

"the facility IGP Supervisor is required to send the plaintiff's appeal to CORC within 7 calendar days[,]" he waited sixty-four days before sending it on July 14, 2022.  Dkt. No. 25-2 at 6-7 (citing 7 N.Y.C.R.R. § 701.5(d)(1)(ii) ("The supervisor must forward appeals within seven calendar days to the CORC.")).  Plaintiff claims that he also "mailed his appeal via USPS first class certified mail to CORC on May 17, 2022[.]"  Id. at 11.  Thus, plaintiff argues that, because he appealed to the CORC on May 11, 2022, and the CORC did not respond by June 10, 2022, he exhausted his remedies.  See id. at 6-14.

"It is . . . well-settled that the grievance process must be complete prior to [an] inmate filing suit in federal court."  Pacheco v. Zurlo, No. 9:09-CV-1330 (TJM/ATB), 2011 WL 1103102, at *3 (N.D.N.Y. Feb. 8, 2011) (citing Burgos v. Craig, 307 F. App'x 469, 470 (2d Cir. 2008) (summary order)), report and recommendation adopted, 2011 WL 1102769 (N.D.N.Y. Mar. 23, 2011).  "Completing the exhaustion requirement after the federal action is filed in insufficient."  Id. "This is true even if the inmate has filed the grievance prior to the federal action, but has not received a final decision on the grievance appeal."  Id. (citing Mendez v. Artuz, No. 01-CV-4157 (GEL), 2002 WL 313796, at *2 (S.D.N.Y. Feb. 27, 2002) (dismissing for failure to exhaust when the plaintiff brought federal action while his appeal to the CORC was pending, even though at the time of the decision, the final decision had likely been rendered)); see Livingston v. Hoffnagle, No. 9:17-CV-1158 (MAD/DEP), 2018 WL 7917922, at *6 (N.D.N.Y. Nov. 2, 2018) (concluding that the plaintiff failed to exhaust because "it is clear that [the] plaintiff's grievance was pending, and therefore unexhausted, at the time of

---

appealed the Superintendent's decision to CORC.  Dublino v. Schenk, No. 9:19-CV-381 (GLS/DJS), 2020 WL 263664, at *5 (N.D.N.Y. Jan. 17, 2020).

12

commencement of this action"), report and recommendation adopted, 2019 WL 409366 (N.D.N.Y. Feb. 1, 2019).

However, the Second Circuit has held that, "[b]ecause the DOCCS [IGP] imposes a mandatory deadline for the CORC to respond, an inmate exhausts administrative remedies when he follows the procedure in its entirety but the CORC fails to respond within the 30 days it is allocated under the regulations." Hayes v. Dahlke, 976 F.3d 259, 270 (2d Cir. 2020) (declining to impose a "reasonableness" requirement that is "found nowhere in the text" and "would leave inmates—and courts—to blindly speculate how long one must wait before filing suit");[8] see Solano v. Aubin, No. 9:20-CV-1378 (BKS/ML), 2023 WL 5200397, at *5 (N.D.N.Y. Aug. 14, 2023) ("Upon the rendering of CORC's decision, or if CORC fails to respond to a grievance within thirty days of its appeal under the third step of the process, the grievant has exhausted administrative remedies."); see also Rodriguez v. Reppert, No. 14-CV-671 (RJA/MJR), 2016 WL 11483439, at *3 (W.D.N.Y. Sept. 28, 2016) (explaining that "after the CORC neglected to decide [the plaintiff]'s appeals within thirty days, . . . his only option was to file this action"), report and recommendation adopted, 2016 WL 6993383 (W.D.N.Y. Nov. 30, 2016).

---

[8] Prior to Hayes, there was a "split of authority within the Second Circuit as to whether a delay by CORC constitutes unavailability that would excuse a plaintiff's failure to exhaust his administrative remedies." Dublino, 2020 WL 263664, at *4. Courts would "engage in a careful factual consideration of each case," by "'focus[ing] on the delay between the date that a decision by CORC was due . . . and the date that the prisoner's federal court complaint was signed[.]'" Id. at *5 (quoting Mayandeunas v. Bigelow, No. 9:18-CV-1161 (GTS/TWD), 2019 WL 3955484, at *4 (N.D.N.Y. Aug. 22, 2019)). The Second Circuit explicitly declined to do so in Hayes, noting that "[b]ecause we rule on exhaustion alone, we decline to consider whether the administrative procedures here were so 'opaque' that they are 'unavailable' under Ross. In doing so, we avoid wading into the often complex and highly fact-specific inquiries of the unavailability exception." Hayes, 976 F.3d at 271 (citing Ross v. Blake, 578 U.S. 632, 643 (2016) (discussing the "three kinds of circumstances in which an administrative remedy . . . is not capable of use to obtain relief")).

> While the exhaustion requirement is designed to ensure that a prisoner uses "all steps that the agency holds out, and do[es] so properly (so that the agency addresses the issues on the merits)," it is not designed to allow prison officials to stall the resolution of complaints—meritorious or not—or an indefinite period of time.

Hayes, 976 F.3d at 270 (quoting Woodford, 548 U.S. 81, 90 (2006), and Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)); see Fox v. Cruz, No. 22-2916, 2023 WL 7481423, at *2 (2d Cir. Nov. 13, 2023) (holding that the plaintiff "fully exhausted his remedies" where he appealed his grievance to the CORC, "which failed to respond within the 30 days required under New York's regulations").

Defendant has failed to come forward with any evidence contradicting plaintiff's claim that plaintiff filed an appeal with the CORC on May 11, 2022. See Braxton v. Bruen, No. 9:17-CV-1346 (BKS/ML), 2020 WL 5752333, at *7 (N.D.N.Y. Aug. 24, 2020) (denying summary judgment where the plaintiff "proffered copies of his . . . appeals" and the defendant "failed to come forward with any evidence"), report and recommendation adopted, 2020 WL 5751172 (N.D.N.Y. Sept. 25, 2020).  Although defendant has submitted a declaration from Cunningham, Cunningham only states that "[p]laintiff appealed this matter to CORC, and it was received on July 21, 2022." Dkt. No. 21-3 at 5, ¶18.  Cunningham does not specify the date in which plaintiff himself filed the appeal to CORC.  See id.  Nor does he clarify if the alleged May 11, 2022, appeal was a "properly submitted" appeal.  Cf. Toussaint v. Gudarma, No. 3:21-CV-32 (MPS), 2022 WL 17716489, at *5 (D. Conn. Dec. 15, 2022) (granting summary judgment where the defendants "present[ed] evidence that [the] plaintiff never properly submitted grievances" and the plaintiff presented no claim "permitting an inference that he properly submitted grievances").  Given the absence of evidence or argument from defendant,

14

and because the Court is required to draw reasonable inferences in plaintiff's favor, the undersigned must infer that the appeal was received on July 21, 2022, due to a delay by a prison administrator, and not because plaintiff did not properly file it on May 11, 2022. See discussion supra Subsection II.A; see also Hudson v. Kirkey, No. 9:20-CV-0581 (LEK/DJS), 2021 WL 1966721, at *4 (N.D.N.Y. May 17, 2021) ("Since the Court is required to draw reasonable inferences in [the p]laintiff's favor, the Court must infer that the grievance was never filed because prison authorities did not file it, not because [the p]laintiff did not attempt to submit it."). Accepting plaintiff's allegations as true, for purposes of this motion, it appears that plaintiff filed an appeal with the CORC on May 11, 2022, and he did not receive a response within thirty days. See Caines v. Pacheco, No. 20-CV-878 (NSR), 2021 WL 2352413, at *3 (S.D.N.Y. June 9, 2021) ("Taking all factual allegations within [the p]laintiff's complaint as true, [the p]laintiff appealed the superintendent's denial of his grievance and the CORC did not respond to the appeal within the 30-day time limit[; thus,] . . . [the p]laintiff exhausted all available administrative remedies even if the CORC did not respond to his appeal before he filed suit.").

Given the foregoing, defendant has not met his burden of showing that plaintiff failed to exhaust his available administrative remedies under the IGP.  Plaintiff has established, at the very least, an unresolved issue of material fact precluding summary judgment.  See, e.g., Baltas v. Maiga, No. 3:20-CV-1177 (MPS), 2022 WL 3646199, at *14 (D. Conn. Aug. 24, 2022) ("[R]easonable inferences of fact drawn in [the plaintiff]'s favor suggest that he exhausted his administrative remedies and that correctional officials failed to respond [to his appeal; t]hus, with all inferences of fact construed most

15

favorably to [the plaintiff] as the non-moving party, the record at least raises questions of fact[.]"); see also Logan v. Graham, No. 18-CV-291 (DNH/ML), 2019 WL 8015209, at *11 (N.D.N.Y. Nov. 26, 2019) (concluding that the plaintiff's allegation that he appealed on a specific date, even absent a copy of that appeal, sufficed to establish a factual dispute at summary judgment, in part because "[the d]efendants bear the ultimate burden of proving that [the p]laintiff did not exhaust his administrative remedies"), report and recommendation adopted, 2020 WL 871197 (N.D.N.Y. Feb. 21, 2020).  As such, it is recommended that the Court deny defendant's motion for summary judgment and "hold a hearing, at which a fact-finder can assess the credibility of witnesses and the relative weight of the evidence the parties present" to determine whether plaintiff exhausted his administrative remedies or if the administrative remedies were unavailable.  Hudson, 2021 WL 1966721, at *4; see also Tillman v. Phillips, No. 9:19-CV-1597 (LEK/CFH), 2021 WL 5233308, at *9 (N.D.N.Y. Nov. 10, 2021), report and recommendation adopted, 2021 WL 5768393 (N.D.N.Y. Dec. 6, 2021).  It is further recommended that the motion for summary judgment be denied without prejudice and with leave to renew upon completion of the exhaustion hearing.

### III. Plaintiff's Cross-Motion for Summary Judgment

Plaintiff cross-moves for summary judgment, arguing that Dr. Hla-Pe Win's "decision to deny [him] medical care violated [his] Eighth Amendment protections." Dkt. No. 25-8 at 7.  Defendant opposes plaintiff's cross-motion, arguing that the motion is premature due to outstanding discovery.  See Dkt. No. 28 at 5-8.

"Where, as here, the parties have cross-moved for summary judgment, a reviewing court 'must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" Ward v. Stewart, 286 F. Supp. 3d 321, 327 (N.D.N.Y. 2017) (quoting Marcano v. City of Schenectady, 38 F. Supp. 3d 238, 246 (N.D.N.Y. 2014)). "In undertaking this analysis, it bears noting that 'a district court is not required to grant judgment as a matter of law for one side or the other.'" Id. at 327-28 (quoting Marcano, 38 F. Supp. 3d at 246); see also Residential Mgmt. (N.Y.) Inc. v. Fed. Ins. Co., 884 F. Supp. 2d 3, 7 (E.D.N.Y. 2012) ("Cross-motions for summary judgment do not alter the basic standard, but simply require the court to determine whether either of the parties deserves judgment as a matter of law on facts that are not in dispute."). Moreover, "[t]he district court considering a summary judgment motion . . . must . . . be mindful of the underlying standards and burdens of proof[.]" Juanes v. Lyzwinski, 875 F. Supp. 2d 155, 160 (N.D.N.Y. 2012) (citation and internal quotation marks omitted). Thus, a plaintiff "bears a much greater initial burden; he must show that the evidence supporting his claims is so compelling that no reasonable jury could return a verdict for the defendant." Id.

Summary judgment is a "drastic device" and "should not be granted when there are major factual contentions in dispute[,] . . . particularly . . . when, as here, one party has yet to exercise its opportunities for pretrial discovery." Nat'l Life Ins. Co. v. Solomon, 529 F.2d 59, 61 (2d Cir. 1975) (citations omitted). A district court should only grant summary judgment "'[i]f after discovery, the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the

17

burden of proof.'" Hellstrom v. U.S. Dep't of Veteran Affs., 201 F.3d 94, 97 (2d Cir. 2000) (quoting Berger v. United States, 87 F.3d 60, 65 (2d Cir. 1996)); see Trebor Sportswear Co. v. The Ltd. Stores, Inc., 865 F.2d 506, 511 (2d Cir. 1989) ("The nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment.") (citation and internal quotation marks omitted).  "Only in the rarest of cases may summary judgement be granted against a [party] who has not been afforded the opportunity to conduct discovery." Hellstrom, 201 F.3d at 97; see also United States v. E. River Hous. Corp., 90 F. Supp. 3d 118, 139 n.21 (S.D.N.Y. 2015) (noting that "courts disfavor summary judgment motions made prior to the completion of discovery").

"It is undisputed that no discovery has been conducted in this action[.]" Dkt. No. 28 at 6.  "Defendant has yet to file an Answer to [p]laintiff's Amended Complaint[,]" and "the Court has yet to issue a Mandatory Pre-Trial Discovery and Scheduling Order because no Answer has been filed." Id.  Defendant argues that, "[w]ithout conducting full discovery, [he] cannot assemble a full record and adequately refute [plaintiff's] allegation[s.]" Id. at 7.  In support of his contentions, defense counsel submits an affidavit[9] explaining that defendant "intends to use discovery to investigate [p]laintiff's allegations[, and to] seek information relevant to [his] affirmative defenses, including mootness." Dkt. No. 28-1 at 2, ¶9; see Dkt. No. 28 at 8-9; see also FED. R. CIV. P. 56(d) (requiring, in the context of summary judgment motions, the nonmovant to show "by

---

[9] "A party resisting summary judgment on the ground that it needs additional discovery in order to defeat the motion must submit an affidavit pursuant to Federal Rule of Civil Procedure 56(d) (formerly Rule 56(f)), showing: '(1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts.'" Lunts v. Rochester City Sch. Dist., 515 F. App'x 11, 13 (2d Cir. 2013) (summary order) (quoting Meloff v. N.Y. Life Ins. Co., 51 F.3d 372, 375 (2d Cir. 1995)).

affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to the motion).

Moreover, plaintiff has not presented any argument for "why this is one of the 'rarest of cases' where summary judgement may be granted against a [party] who has not been afforded the opportunity to conduct discovery." King v. Wenderlich, No. 14-CV-6491 (FPG), 2016 WL 4678998, at *2 (W.D.N.Y. Sept. 7, 2016) (quoting Hellstrom, 201 F.3d at 97). Thus, given that plaintiff filed his motion before the parties engaged in any discovery, the Court finds that plaintiff's motion for summary judgment is premature. See Crystalline H2O, Inc. v. Orminski, 105 F. Supp. 2d 3, 8 (N.D.N.Y. 2000) (collecting Second Circuit cases denying summary judgment motions as premature where there was not "a fully adequate opportunity for discovery at the time the moving party sought summary judgment" (internal citation omitted)). It is, therefore, recommended that plaintiff's cross-motion for summary judgment be denied as premature.

## IV. Conclusion

**WHEREFORE**, for the reasons set forth above, it is hereby:

**RECOMMENDED**, that defendant's motion for summary judgment (Dkt. No. 21) be **DENIED without prejudice**, subject to renewal upon completion of the exhaustion hearing; and it is further

**RECOMMENDED**, that plaintiff's cross-motion for summary judgment (Dkt. No. 25) be **DENIED**; and it is

**RECOMMENDED**, that, if the District Judge adopts this Report-Recommendation and Order, defendant be given fourteen (14) days from the date of the District Judge's Decision and Order to answer plaintiff's amended complaint; and it is

**ORDERED**, that the Clerk amend the case caption to reflect Dr. Hla-Pe Win as the only named defendant in this action; and it is further

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72.[10]

Dated: February 29, 2024
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[10] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections.  See FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  See id. § 6(a)(1)(C).